# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TEAM CONTRACTORS, LLC,**<br>     **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-1131** |
| **WAYPOINT NOLA, LLC,**<br>**ET AL.,**<br>     **Defendants** | **SECTION: "E"(2)** |

## ORDER AND REASONS

Before the Court is Plaintiff-in-Crossclaim Waypoint NOLA, L.L.C.'s ("Waypoint") Motion for Partial Summary Judgment.[1] Waypoint seeks summary judgment on liability in its crossclaim against Defendants-in-Crossclaim HC Architecture, Inc. ("HCA") and Salas O'Brien South, successor in interest to KLG, L.L.C. ("KLG").[2] The motion is opposed by both HCA[3] and KLG.[4] The Court heard oral argument on August 18, 2017, during which the Court instructed the parties to submit additional briefing on the issue of HCA's liability for its subcontractors.[5] The parties duly submitted additional memoranda.[6] The Court has considered the briefs, record, and applicable law, and now issues its ruling. For the reasons that follow, the Motion for Partial Summary Judgment is **DENIED**.

## BACKGROUND

This case involves the development and construction of the Hyatt House hotel in downtown New Orleans, Louisiana ("the Project"). It is undisputed that Team Contractors, L.L.C. ("Team"), the owner of the Project, entered into a contract with

---

[1] R. Doc. 123.
[2] R. Doc. 14.
[3] R. Doc 155.
[4] R. Doc. 157.
[5] R. Doc. 187.
[6] R. Doc. 190 (Waypoint); R. Doc. 191 (HCA); R. Doc. 192 (Plaintiff Team Contractors, L.L.C.); R. Doc. 199 (HCA).

Waypoint for the construction and/or renovation of seven floors of the property located at 1250 Poydras Street, New Orleans, Louisiana.[7] Team alleges it incurred damages during construction in the form of additional subcontractor work, hourly labor at Team's expense, and other related costs, when it was directed to remove deficient plumbing and mechanical systems ("MEP systems") and re-install revised systems.[8] Specifically, Team claims the original plumbing system designs did not comply with ventilation requirements in the New Orleans plumbing code,[9] and the mechanical designs omitted more than 150 smoke dampers, in violation of other applicable municipal codes.[10] Team filed a complaint in this Court to recover these costs from Waypoint, the owner; HCA, the architect with which Team contracted; and KLG, HCA's mechanical, electrical, and plumbing engineering subcontractor.[11]

Waypoint filed a crossclaim against HCA and KLG, and a third-party demand against Bobby Beach and Danny Lundstrom, two licensed engineers who provided engineering services for KLG and HCA on the Project.[12] Waypoint alleges that HCA breached its duty to Waypoint by providing substandard plans and specifications for the Project, failing to properly oversee its subcontractors, failing to properly coordinate the design of the project, and failing to timely remedy the relevant design errors.[13] As to KLG, Waypoint alleges that KLG negligently performed its duties as engineer by producing MEP system designs that did not comply with local codes.[14]

---

[7] R. Doc. 1 at 2.
[8] R. Doc. 1 at 2-3.
[9] R. Doc. 123-2 at 5.
[10] R. Doc. 123-2 at 6.
[11] R. Doc. 1.
[12] R. Doc. 14 at 25-26.
[13] R. Doc. 14 at 18.
[14] R. Doc. 14 at 18-19.

On August 2, 2017, Waypoint filed a Motion for Partial Summary Judgment on the liability of HCA and KLG.[15] Waypoint argues there is no genuine dispute of material fact as to the liability of HCA and KLG, and that it is thus entitled to judgment as a matter of law on its crossclaim.[16]

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17] "An issue is material if its resolution could affect the outcome of the action."[18] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[19] All reasonable inferences are drawn in favor of the nonmoving party.[20] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[21]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[22] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving

---

[15] R. Doc. 123.
[16] R. Doc. 123-2 at 19.
[17] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[18] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[19] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[20] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[21] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[22] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[23]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[24] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[25] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[26] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[27] If the movant meets this

---

[23] *Celotex*, 477 U.S. at 322–24.

[24] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

[25] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

[26] *Celotex*, 477 U.S. at 332–33.

[27] *Id.*

burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[28] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[29]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[30]

## LAW AND ANALYSIS

### A. Duty/Risk Analysis Under Louisiana Law

Waypoint seeks summary judgment that HCA and KLG are liable to it for damages caused by the two firms' negligence. Because jurisdiction in this matter is based on diversity, the Court will apply Louisiana negligence law.[31] Louisiana law employs a duty-risk analysis in determining liability for negligence.[32] This test requires a plaintiff to prove five elements:

---

[28] *Celotex*, 477 U.S. at 332–33, 333 n.3.

[29] *Id.*; *see also First National Bank of Arizona*, 391 U.S. at 289.

[30] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

[31] *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[32] *Bufkin v. Felipe's Louisiana, LLC*, 2014-0288 (La. 10/15/14), 171 So.3d 851, 855.

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages.[33]

The question of whether a duty is owed, and the scope of that duty, is a question of law. Whether there was a breach of the duty, whether the substandard conduct was the cause-in-fact and legal cause of the damages, and whether damages resulted, are questions of fact.[34]

Louisiana courts have recognized that the five-factor negligence inquiry presents a particularly difficult challenge at the summary judgment stage, because "a negative answer to any of the inquiries of the duty/risk analysis results in a determination of no liability."[35] Moreover, Louisiana courts have made clear that summary judgment should not be granted on particular elements of a negligence claim, because, "by dividing the issue of liability into smaller issues. . . . [t]here is a possibility of confusion arising out of the factual interrelationship between the adjudicated element and the unadjudicated element that could lead to inconsistent rulings and piecemeal litigation."[36] In other words, summary judgment "may not be granted for purposes of determining a particular element of liability where such a determination is not completely dispositive of the question of liability between the parties concerning the claim and where other issues such as comparative fault remain unresolved."[37] Thus, to succeed on summary judgment, Waypoint must provide undisputed evidence entitling it to judgment as a matter of law

---

[33] *Id.*
[34] *Teter v. Apollo Marine Specialties, Inc.*, 2012-1525 (La. App. 4 Cir. 4/10/13), 115 So. 3d 590, 598.
[35] *Hanks v. Entergy Corp.*, 2006-477 (La. 12/18/06), 944 So.3d 564.
[36] *Jones v. LSU Health Sciences Center-Shreveport*, 39,292CW (La. Ct. App. 2 Cir. 2004), 880 So. 2d 269.
[37] *Williams v. City of New Orleans* (La. Ct. App. 1994) 637 So. 2d 1130, 1132, *writ denied*, 94-1587 (La. 10/7/94), 644 So. 2d 632.

with respect to all five elements of the negligence analysis under Louisiana law. Waypoint has not met this burden, however, because Defendants-in-Crossclaim raise disputes of material fact regarding the causation prong of the negligence inquiry, and factual issues regarding comparative fault and superseding cause remain unresolved.

## B. Causation

Waypoint's motion does not directly address the causation element of the negligence test and, instead, appears to assume a causal connection between the code-deficient MEP drawings and its damages. HCA and KLG disagree and provide summary judgment evidence they say shows that the fault of Waypoint, Team, and Team's mechanical and plumbing subcontractor caused the damages. This evidence creates a genuine dispute of material fact regarding the cause of Waypoint's damages.

It is undisputed that Team retained Ray & Sons Heating & Air Conditioning ("Ray"), a Georgia-based contractor, as the mechanical, plumbing, and heating and air conditioning subcontractor for the Project.[38] Ray's responsibilities included building the MEP systems designed by HCA and KLG.[39] HCA delivered a complete set of plans and specifications, including KLG's drawings, to Team on September 26, 2014,[40] and by the end of January, Ray had completed a significant amount of the plumbing and mechanical work.[41]

According to Defendants-in-Crossclaim's summary judgment evidence, Ray began the MEP work before obtaining the relevant permits from New Orleans building

---

[38] R. Doc. 157-2 at 133-35 (Deposition of Brett Fortner, Team Contractors). *See* 157-4 (Subcontract between Team and Ray). Ray & Sons is not a party to this case.
[39] R. Doc. 157-3 (plumbing subcontract); R. Doc. 157-4 (heating, ventilation, and air conditioning subcontract).
[40] R. Doc. 155-2 at ¶ 9 (Affidavit of Tom Hogan).
[41] R. Doc. 157-8 at 207 (Hyatt House New Orleans Monthly Report, January 2015).

authorities.[42] Under the rules of the New Orleans Sewerage and Water Board ("SWR"), a project's master plumber must obtain a permit prior to commencing construction:

> 2.6.1 Application – Before beginning the construction, reconstruction, alteration or repair of any part of a plumbing system, the files for the Sewerage and Water Board Plumbing Department shall be checked for clearance and permission granted by the department to do such work.[43]

Further, the SWR rules place the ultimate burden of compliance on the property owner:

> No property owner shall cause, or permit any installation, connection, addition, or alteration to be made to any water, drain , soil, waste pipe, or any pipe connected thereto, unless a permit therefore shall have been issued by the Plumbing Department of the Sewerage and Water Board[.][44]

This is consistent with Louisiana law, which assigns the duty to obtain necessary permits to the owner.[45]

Although Ray started the MEP work in January, employees from Ray and Team did not seek SWR approval for the plumbing plans until February 24, 2015, [46] around the time that the errors and omissions in the project become apparent.[47] Similarly, work began on the mechanical systems in January, 2015, but a permit application was not submitted until February 9, 2015.[48] In response to requests by the municipal authorities, the plans were revised and resubmitted less than a month later.[49] Defendants-in-Crossclaim's summary judgment evidence has created a genuine issue of disputed fact with respect to the causal connection between HCA/KLG's conduct and Waypoint's

---

[42] R. Doc. 157, Exhibit D at 90 (Deposition of Brett Fortner).
[43] R. Doc. 157-20 at 6 (Rules of the New Orleans Sewerage and Water Board § 2.6.1).
[44] *Id.* at § 2.2.4.
[45] *See* LA. REV. STAT. ANN. § 37:2160A, 2161 (2009).
[46] R. Doc. 157-7 at 11 (Deposition of Steve Laski).
[47] R. Doc. 157-7 at 13 (Deposition of Steve Laski). R. Doc. 123-20.
[48] R. Doc. 157-14 (Application Confirmation Form).
[49] *Id.*

damages. Accordingly, Waypoint is not entitled to summary judgment on its claim of negligence.

C. Superseding Causes and Comparative Fault

Further, because Defendants-in-Crossclaims' summary judgment evidence raises issues of superseding cause and comparative fault that would be unresolved by this motion, summary judgment is not appropriate. Under Louisiana law, a motion for partial summary judgment on the determination of tort liability includes a determination of all issues of proximate cause, including comparative fault, concurrent causes, and superseding causes.[50] "Ordinarily, the determination of whether negligence exists in a particular case is a question of fact; therefore, cases involving a question of negligence ordinarily are not appropriate for summary judgment. This principle extends to a question of comparative fault as well."[51] Even if Waypoint were able to satisfy the elements of breach, causation, and damages, the Court should not grant Waypoint's motion if the judgment is "not completely dispositive of the question of liability between the parties concerning the claim and where other issues such as comparative fault remain unresolved."[52] Because granting the present motion would leave questions of superseding cause and comparative fault unanswered, summary judgment must be denied.

---

[50] *See Williams v. City of New Orleans,* 93-2043 (La. App. 4 Cir. 5/17/94), 637 So.2d 1130, 1132; *see also Rance v. Harrison Co.,* 31,503 (La. App. 2 Cir. 1/20/99), 737 So.2d 806, 810 *writ denied,* 99-0778 (La. 4/30/99), 743 So.2d 6206 ("[T]he granting of summary judgment as to liability must dispose of all liability issues, including contributory or comparative negligence."). *See also Cunningham v. Northland Ins. Co.,* 00-888 (La. App. 5 Cir. 9/14/00), 769 So.2d 689.

[51] *Lewis v. Pine Belt Multipurpose Cmty. Action Acquisition Agency, Inc.,* 48,880 (La. App. 2 Cir. 5/7/14), 139 So.3d 562, 569 *writ denied* 2014-0988 (La. 8/25/14) and 2014-1190 (La. 8/25/14) (citations omitted); *see also Pruitt v. Nale,* 45,483 (La. App. 2 Cir. 8/11/10), 46 So.3d 780, 783; *but see Rance v. Harrison Co., Inc.,* 31,503 (La. App. 2 Cir. 1/20/99), 737 So.2d 806, 810 ("Where reasonable minds cannot differ, the question of contributory or comparative negligence is a question of law that may be resolved by summary judgment.").

[52] *Williams v. City of New Orleans* (La. Ct. App. 1994) *writ denied,* 94-1587 (La. 10/7/94), 644 So.2d 632.

For instance, HCA and KLG provide summary judgment evidence that Waypoint's and Ray's failure to obtain permits prior to beginning construction is a superseding cause of Waypoint's damages, or alternatively that Waypoint and Ray are comparatively at fault. "A superseding or intervening cause is one which comes into play after the defendant's negligent conduct has ceased, but before the plaintiff suffers injury,"[53] which "may sever the causal connection between a plaintiff's injuries and a defendant's negligence."[54] However, "[i]f the original tortfeasor could or should have reasonably foreseen that the accident might occur, he or she will be liable notwithstanding the intervening cause."[55] In this case, there is a question of fact as to the foreseeability of Waypoint's and Ray's failure to obtain all legally required permits before beginning construction.

Brett Fortner of Team Contractors testified he has worked on "countless examples" of projects in which the subcontractor was allowed to start the plumbing work without final permits.[56] This testimony suggests it may be common industry practice to begin work without municipal approval. If so, it may have been foreseeable to HCA that construction would begin before issuance of final permits. In opposition, HCA provides evidence that it is "customary" for architects and engineers to revise permitting plans when municipal authorities make comments for correction.[57] This dispute is dispositive as to Defendants-in-Crossclaim's superseding cause defense, and so must be resolved before the Court may grant summary judgment.

Finally, in addition to the superseding cause doctrine, there remain factual disputes relevant to a final determination of comparative fault. Because Waypoint is

---

[53] *Johnson v. Morehouse General Hosp.* 10-0387 (La. 5/10/11), 63 So.3d 87.
[54] *Lahare v. Valentine Mechanical Services, LLC* 17-289 (La. App. 5 Cir. 6/29/17), 2017 WL 2807209.
[55] *Adams v. Rhodia, Inc.,* 2007-2110 (La. 5/21/08), 983 So.2d 798, 808.
[56] R. Doc. 155, Exhibit D at 90 (Deposition of Brett Fortner).
[57] R. Doc. 155-2 at ¶¶ 12-13 (Affidavit of Tom Hogan).

entitled to summary judgment only if the Defendants are solely at fault, the Court should focus on "whether the Defendants have offered competent summary judgment evidence sufficient to show a genuine issue of material fact as to the comparative fault of the [Plaintiff-in-Crossclaim]."[58] Construing the evidence described above in the light most favorable to HCA and KLG, the evidence raises sufficient factual issues to defeat any determination on summary judgment that HCA and KLG are solely at fault. Because summary judgment as prayed for would not be "completely dispositive of the issue of liability between the parties and other issues such as comparative fault remain," Waypoint's motion for summary judgment must be denied.

## CONCLUSION

The Court finds genuine disputes of material fact regarding HCA and KLG's liability to Waypoint.

Accordingly;

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment on the liability of HCA and KLG is hereby **DENIED**.

**New Orleans, Louisiana, this 22nd day of September, 2017**.

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[58] *Rea v. Wisconsin Coach Lines, Inc.*, 2014 WL 4999447 (E.D. La. 2014).