UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| TEAM CONTRACTORS, L.L.C., Plaintiff | CIVIL ACTION |
|---|---|
| VERSUS | NO. 16-1131 |
| WAYPOINT NOLA, L.L.C., ET AL., Defendants | SECTION: "E"(2) |

## ORDER AND REASONS

Before the Court is Defendants' Joint Motion for Partial Summary Judgment.[1] HC Architecture, Inc. ("HCA"), Salas O'Brien South, successor in interest to KLG, L.L.C. ("KLG"), Danny Y. Lundstrum, and Bobby G. Beach seek summary judgment on the issue of Plaintiff Team Contractors, L.L.C.'s ("Team") claim for extended home office overhead damages under *Eichleay*.[2] The motion is opposed.[3] The Court heard oral argument regarding the motion on August 18, 2017.[4] The Court has considered the briefs, record, and applicable law, and now issues its ruling. For the reasons that follow, the Motion for Partial Summary Judgment is **DENIED**.

## BACKGROUND

This case involves the development and construction of the Hyatt House hotel in downtown New Orleans, Louisiana ("the Project"). It is undisputed that Team entered into a contract with Waypoint NOLA, L.L.C. ("Waypoint"), the owner of the Project, for the construction and/or renovation of seven floors of the property located at 1250 Poydras Street, New Orleans, Louisiana.[5] Waypoint also entered into an agreement by which HCA

---

[1] R. Doc. 124.
[2] R. Doc. 124 at 2. *See Eichleay Corp.*, ASBCA No. 5183, 60-2 B.C.A. (CCH) ¶ 2688 (July 29, 1960).
[3] R. Doc. 168.
[4] R. Doc. 187.
[5] R. Doc. 1 at 2.

1

would serve as the Project's architect, and additionally provide "all normal Architectural, Civil, Structural, and [mechanical, electrical, and plumbing] engineering services."[6] HCA, in turn, subcontracted the mechanical, electrical, and plumbing ("MEP") design work to KLG.[7]

HCA delivered a complete set of specifications, including KLG's MEP plans, to Team on September 26, 2014.[8] It was later discovered that several components of KLG's MEP system design did not comply with New Orleans code requirements. For example, the original plumbing designs did not comply with ventilation requirements in the New Orleans plumbing code,[9] and the mechanical designs omitted more than 150 smoke dampers, in violation of other applicable municipal codes.[10] Because construction had begun on the MEP systems before the parties recognized the code deficiencies, Waypoint issued several construction change directives, under which Team had to remove the faulty systems and rebuild the MEP systems from revised plans before continuing its work as scheduled.[11]

Team filed suit in this Court in February 2017, alleging breach of contract by Waypoint and negligence on the part of Waypoint, HCA, and KLG.[12] Team alleges it incurred damages during construction in the form of additional subcontractor work, hourly labor, increased supervision, and other recurring expenses, when it was directed to remove the deficient MEP systems and re-install revised systems.[13] Team argues that

---

[6] R. Doc. 53-3.
[7] R. Doc. 157-18 (KLG Proposal).
[8] R. Doc. 155-2 at ¶ 9 (Affidavit of Tom Hogan).
[9] R. Doc. 123-2 at 5.
[10] R. Doc. 123-2 at 6.
[11] R. Doc. 1 at 4.
[12] R. Doc. 1.
[13] R. Doc. 1 at 2-3.

the additional work from these corrections resulted in an extension of its obligations on the Project and a delay of the Project's completion date.[14]

Team's expert, Rittiner & Associates ("R&A"), issued a report on June 5, 2017, which included opinions with respect to Team's damages claims.[15] R&A opined that Team suffered extended home office overhead damages related to the delay.[16] In calculating the extended home office overhead damages, R&A used the *Eichleay*[17] formula,[18] which "computes the daily amount of overhead that the contractor would have charged to the contract had there been no delay, and gives the contractor this amount of overhead for each day of delay that has occurred during performance."[19]

On August 2, 2017, HCA, KLG, Beach, and Lundstrom filed a Motion for Partial Summary Judgment on Team's claim for extended home office overhead, arguing that Plaintiff has failed to establish entitlement to extended overhead under *Eichleay*.[20]

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21] "An issue is material if its resolution could affect the outcome of the action."[22] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing

---

[14] R. Doc. 1 at 4.
[15] R. Doc. 119-2.
[16] Defendants separately moved for summary judgment on the issue of Plaintiff's claim for lost profits. R. Doc. 119. The Court denied this motion. R. Doc. 255.
[17] *See Eichleay Corp.*, ASBCA No. 5183, 60-2 B.C.A. (CCH) ¶ 2688 (July 29, 1960).
[18] R. Doc. 124-2.
[19] Bert K. Robinson, *Construction Law: Elements of Contractors' Damages*, 38 LA. B. J. 247, 248 (1990).
[20] R. Doc. 119 at 1.
[21] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[22] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

3

the evidence."[23] All reasonable inferences are drawn in favor of the nonmoving party.[24] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[25]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[26] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[27]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[28] When proceeding under the first option, if the

---

[23] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[24] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[25] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[26] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[27] *Celotex*, 477 U.S. at 322–24.
[28] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority

nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[29] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[30] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[31] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[32] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[33]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the

---

and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[29] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[30] *Celotex*, 477 U.S. at 332–33.
[31] *Id.*
[32] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[33] *Id.*; *see also First National Bank of Arizona*, 391 U.S. at 289.

record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[34]

## ANALYSIS

Defendants seek summary judgment that Plaintiff is not entitled to recover any damages for extended home office overhead.[35] In Louisiana, the general rule as to the measure of damages is the amount of loss the plaintiff has sustained or the gain of which he has been deprived.[36] This measure may include both direct and indirect damages.[37] Louisiana courts have long held that home office overhead expenses, which include "costs of running a business, such as accounting and payroll services, general insurance, salaries of upper-level management, heat, electricity, taxes, and depreciation," are recoverable as indirect damages when the breaching party delays performance by the non-breaching party.[38]

Louisiana courts apply a three-prong test to determine if a claimant is entitled to recover extended home office overhead damages:

> First, the contractor must demonstrate that there was a government-caused delay[39] not excused by a concurrent contractor-caused delay. Second, the contractor must show that it incurred additional overhead expenses, either

---

[34] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[35] R. Doc. 124 at 2.
[36] LA. CIV. CODE art. 1995 (1985).
[37] *McCarty Corp. v. Indus. Scaffolding, Inc.*, 14681 (La. App. 1 Cir. 6/25/1981); 413 So. 2d 1322, 1324 ("Overhead or indirect expenses are in fact an expense. They are as true a cost of doing business as are the direct costs. For these reasons, it is customary to make an award of overhead in both actions of breach of contract and tort actions to cover indirect expenses . . .").
[38] *Gilchrist Const. Co., LLC v. State, Dep't of Transp. & Dev.*, 2013-2101 (La. App. 1 Cir. 3/9/15); 166 So. 3d 1045, 1064 (quoting *JMR Const. Corp. v. United States*, 117 Fed. Cl. 436, 442 (Fed. Cl. 2014)). *See also Magnolia Construction Co., L.L.C. v. Parish of St. Charles*, 06-543 (La. App. 5 Cir. 11/28/06); 947 So. 2d 747.
[39] The *Eichleay* jurisprudence evolved in the field of government contracts, and so generally involves claims by contractors against the federal government. The parties have not argued that *Eichleay* is inapplicable in the context of private contracts, so the Court does not address the issue.

6

because the contract's performance period was extended or because the contract would have finished prior to the unextended performance period's close. Third, the contractor must establish that it was required to remain "on standby" for the duration of the delay. [40]

To show that it was "on standby," a contractor must show (1) the delay was not only substantial, but was of an indefinite duration, (2) the contractor was required to return to work at full speed and immediately during the delay, and (3) most, if not all, of the contract work was suspended. [41]

Louisiana courts have been reluctant to broaden the application of *Eichleay* beyond these "strict prerequisites."[42] In *Gilchrist Const. Co., LLC v. State, Dep't of Transp. & Dev.*, the Louisiana Court of Appeal reviewed a contractor's claim for home office overhead damages related to an extended construction schedule.[43] In that case, the government's alleged negligence resulted in a delayed schedule, and the plaintiffs sought damages for the period in which, but for the delay, it would have earned income from other contracts. The court recognized that although the case expressed "the underlying principle of the *Eichleay* formula, that the delay caused by the public entity precludes the contractor from undertaking other work to otherwise absorb the continuous accrual of home office overhead," it nonetheless declined to apply *Eichleay* because the plaintiff failed to show a work stoppage.[44]

Similarly, in *Alonso et al. v. Westcoast Corp.*,[45] the U.S. District Court for the Middle District of Louisiana declined to widen the application of *Eichleay*. In that case, the court reversed a jury's award of home office overhead damages because the plaintiff

---

[40] *Gilchrist Const. Co., LLC*, 166 So. 3d at 1065.
[41] *Id.*
[42] *Id.* at 1065.
[43] *Id.* at 1049.
[44] *Id.* at 1065.
[45] 2017 WL 4176973 (M.D. La. Sept. 21, 2017).

had not presented sufficient evidence that the contract was required to return to work "at full speed and immediately."[46]

In the present case, Defendants argue that Plaintiff cannot recover extended home office overhead damages under *Eichleay* because "there was no suspension or stoppage of the work."[47] Defendants set forth three facts in support of their motion. First, they point to Brett Fortner's deposition testimony suggesting there was no shutdown or work stoppage resulting from the construction change directives.[48] Second, Fortner testified that Team's executive and supervisory employees were working hard on the project after the plumbing and mechanical issues were discovered.[49] Third, Fortner testified that the Team's subcontractors were also busy working to resolve the MEP issues after they were discovered.[50]

Team disputes each of these facts as mischaracterizations of Mr. Fortner's testimony.[51] In response, Team provides summary judgment evidence that there was a functional stoppage of "all or most of the work performed" pursuant to the contract.[52] Deposition testimony by both Mr. Fortner and Steve Laski indicates that at least some of Team's work was stopped as a result of the construction change directives.[53] For example, Mr. Fortner testified that "work was not advancing" beyond tasks "on a minor, minor level."[54]

---

[46] *Id.* at *5.
[47] R. Doc. 148.
[48] R. Doc. 124-5 at 9-12 (Deposition of Brett Fortner).
[49] *Id.*
[50] *Id.*
[51] R. Doc. 168.
[52] R. Doc. 168-5. *See* R. Doc. 168-3 at 2 (Deposition of B. Fortner).
[53] R. Doc. 168 at 4-6.
[54] R. Doc. 168-3.

Louisiana courts have not decided whether a "functional" work stoppage would satisfy *Eichleay*, and if so, what degree of work stoppage is required. "In the absence of a final decision by the state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case."[55] That is, this Court must make an "*Erie* guess."[56]

In its limited application of *Eichleay*, Louisiana courts have seemingly adopted the doctrine from federal courts without alteration. As the court noted in *Gilchrist*, "while the *Eichleay* formula is basically a jurisprudential doctrine emanating from the federal courts that has seeped, to a slight degree, into our state court system for adoption, we observe that even use of the formula by our courts has been consistent with [federal courts'] prerequisites."[57] Accordingly, federal analyses of this issue are particularly persuasive, and should weigh heavily in this Court's *Erie* guess.

Federal courts have held a claimant need not show a total stoppage of work to recover extended overhead damages.[58] On this theory, a contractor's performance of minor tasks during the suspension does not prevent it from recovering under *Eichleay*.[59] The Court agrees. The completion of minor tasks during an otherwise stopped construction project should not preclude recovery of home office overhead damages. "It

---

[55] *Am Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003).
[56] *Keen v. Miller Environmental Group, Inc.*, 702 F.3d 239 (5th Cir. 2012).
[57] *Gilchrist Const. Co., LLC v. State, Dep't of Transp. & Dev.*, 2013-2101 1065 (La. App. 1 Cir. 3/9/15); 166 So. 3d 1045, 1065.
[58] *See, e.g.*, *Altmayer v. Johnson*, 79 F.3d 1129 (Fed. Cir. 1996); *JMR Const. Corp. v. United States*, 117 Fed. Cl. 436, 442 (Fed. Cl. 2014)).
[59] *Id.*

is sufficient, for purposes of establishing standby, if a contractor can demonstrate that work has 'stopped or significantly slowed.'"[60]

The question of whether a plaintiff incurred delay-related damages is "in part, a factual determination," so any genuine issues of material fact regarding a claim for damages precludes summary judgment.[61] Whether or not the work slowdown resulting from the MEP design errors was sufficient to entitle Team to recover extended home office overhead damages is a factual question disputed by the parties. Because this question represents a genuine dispute of material fact, summary judgment is not appropriate.[62]

## CONCLUSION

Accordingly;

**IT IS ORDERED** that Defendants' Joint Motion for Partial Summary Judgment on Team Contractors, LLC's claim for lost profits is hereby **DENIED**.

**New Orleans, Louisiana, this 2nd day of October, 2017**.

                                                       _____
                                                     **SUSIE MORGAN**
                                 **UNITED STATES DISTRICT JUDGE**

---

[60] *JMR Const. Corp.*, 117 Fed. Cl. at 443 (quoting *P.J. Dick Inc. v. Principi*, 324 F.3d 1364, 1372 (Fed. Cir. 2003).
[61] *Gilchrist Const. Co., LLC v. State, Dep't of Transp. & Dev.*, 2013-2101 (La. App. 1 Cir. 3/9/15); 166 So. 3d 1045, 1064.
[62] The Court notes that the Plaintiff must still prove an entitlement to damages at trial by demonstrating it did not cause the delay, that it incurred additional overhead expenses, and that it was required to remain on standby. *Eichleay* does not relieve a contractor of its burden of proving that it is entitled to recover home office overhead damages; *Eichleay* merely provides a formula for calculating those damages when the plaintiff has proven them.