## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TEAM CONTRACTORS, LLC,** | **CIVIL ACTION** |
| **Plaintiff** | |
| | |
| **VERSUS** | **NO.  16-1131** |
| | |
| **WAYPOINT NOLA, LLC, ET AL.,** | **SECTION: "E"(2)** |
| **Defendants** | |

### ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Plaintiff Team Contractors, LLC ("Team").[1] Defendant Waypoint NOLA, L.L.C. ("Waypoint") opposes.[2] For the following reasons, the motion is **DENIED**.

### BACKGROUND

This dispute arises from contracts made in connection with the construction and renovation of Waypoint's property at 1250 Poydras St. in New Orleans ("the Project"). On September 19, 2014, Waypoint entered a contract with Development Construction Management LLC, represented by Steve Laski ("Laski"), under which Laski agreed to provide project management services for the Project.[3] On September 24, 2019, Team and Waypoint entered into a construction contract ("the Prime Contract"), under which Team became the general contractor for the Project.[4] Waypoint also entered into a contract with HC Architecture, Inc. ("HCA"), under which HCA agreed to serve as the project's

---

[1] R. Doc. 446.
[2] R. Doc. 455.
[3] R. Doc. 477-1.
[4] R. Doc. 446-8 at 1, ¶ 1; R. Doc. 469 at 1, ¶ 1. The contract is attached to the instant motion. R. Doc. 446-2.

architect.[5] HCA, in turn, subcontracted the mechanical, electrical, and plumbing design work to KLG, L.L.C. ("KLG").[6]

The terms of the Prime Contract are undisputed.[7] The Prime Contract contains the following term governing payment:

§ 5.2 **FINAL PAYMENT**
§ 5.2.1 Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner [Waypoint] to the Contractor [Team] when

.1   the Contractor has fully performed the Contract except for the Contractor's responsibility to correct work as provided in Section 12.2.2 of AIA Document A201—2007, and to satisfy other requirements, if any, which extend beyond final payment;

.2   a final Certificate for Payment has been issued by the Architect [HCA];

.3   *as a prerequisite to final payment, the Contractor shall submit (i) a release in form reasonably acceptable to the Owner of liens and claims executed by the Contractor and by each of its subcontractors on behalf of which payment is requested* and (ii) a Contractor's Environmental Certification in the form attached hereto as Exhibit F.

§ 5.2.2 The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows: [8]

The contract also includes, as § 8.6.15, a heading entitled "LIEN WAIVERS FOR PROGRESS AND FINAL PAYMENTS:,"[9] but there is no contract term following the heading.

Team submitted three lien waivers to Waypoint on July 27, 2016.[10] Each lien waiver is labeled "Final Waiver of Liens" and includes as an attachment a list of

---

[5] R. Doc. 446-3.
[6] R. Doc. 157-18. Defendant KLG informed the Court in its answer that it is now known as Salas O'Brien South, L.L.C. R. Doc. 34. The parties continued to refer to it as KLG. The Court will continue to do so in this order.
[7] R. Doc. 446-8 at 1, ¶ 1; R. Doc. 469 at 1, ¶ 1.
[8] R. Doc. 446-2 at 6–7 (emphasis added).
[9] *Id.* at 10.
[10] R. Docs. 446-6, 455-3.

outstanding sums owed to subcontractors.[11] The attachments list different amounts owed to different subcontractors. Waypoint did not pay Team after receiving these first three lien waivers. On June 28, 2017, Team submitted a fourth lien waiver, which also was labeled "Final Waiver of Liens" and includes as an attachment a different list of outstanding sums owed to subcontractors.[12] On July 10, 2017, Waypoint paid Team the final payment amount of $1,023,514.09.[13]

On February 5, 2016, Team filed a complaint against HCA, KLG, and Waypoint.[14] Team alleged there were errors in the plans and specifications provided by Waypoint for the mechanical, electrical, and plumbing systems relating to the construction project, which were prepared by KLG.[15] Team also alleged Waypoint directed it to modify the MEP systems, but did not compensate Team for the additional costs Team incurred as a result of the modifications.[16] Plaintiff Team brought a breach of contract claim against Waypoint, alleging Waypoint's failure to compensate Team breached the construction contract.[17] Team also brought negligence claims against Waypoint, HCA, and KLG.[18]

This Court conducted a jury trial in this matter from February 26, 2018 to March 9, 2018. There were three remaining claims at trial: Team's breach of contract claim against Waypoint and Team's negligence claims against HCA and KLG.[19] Team did not

---

[11] Each lien waiver consists of two pages: the waiver and an "Exhibit A" listing sums owed to subcontractors. Team attaches to this motion both pages of the first lien waiver, R. Docs. 446-6. Waypoint attaches the second and third lien waivers, but only includes the second page. R. Doc. 455-3. The lien waivers were admitted at trial as Trial Exhibit 320. The second and third lien waivers may be found, in their entirety, at Trial Exhibit 320 at 10–13.
[12] R. Doc. 446-4.
[13] R. Doc. 466-8 at 1, ¶ 3; R. Doc. 469 at 1, ¶ 3.
[14] R. Doc. 1.
[15] *Id.* at 3, ¶ 16.
[16] *Id.* at 4–5.
[17] *Id.* at 5.
[18] *Id.* at 5–7.
[19] R. Doc. 364.

3

pursue a negligence claim against Waypoint at trial.[20] The jury awarded Team $565,979.99 in damages.[21] On the negligence claims against HCA and KLG, the jury found HCA and KLG's conduct violated their professional duties of care and caused damage to Team.[22] The jury also found Waypoint had not breached the contract.[23] However, the jury assigned Waypoint and its agent responsibility for damages.[24] When assigning "percentages of responsibility for the damages" awarded, the jury assigned 30% to HCA, 60% to KLG, 5% to Waypoint, and 5% to Waypoint's project manager Steve Laski, who was not a party to the suit.[25]

On March 19, 2018, the Court entered judgment on the verdict against Defendants HCA and KLG for $509,381.99, representing 90% of the total damages the jury awarded.[26] The Court entered judgment in favor of Defendant Waypoint on the breach of contract claim.[27] On April 2, 2018, Team filed a motion to amend, arguing the jury's finding that Waypoint did not breach its contract with Team was irreconcilably inconsistent with its assigning Waypoint and its agent responsibility for damages.[28]

On September 6, 2018, the Court granted Team's motion.[29] The Court found the jury verdict irreconcilably inconsistent, vacated the judgment in favor of Waypoint on Team's breach of contract claim, and ordered a new trial on the claim.[30]

---

[20] *Id.*
[21] *Id.* at 3, ¶ 8.
[22] *Id.* at 1, ¶ 1–4.
[23] *Id.* at 2, ¶ 6.
[24] *Id.* at 4, ¶ 9.
[25] *Id.*
[26] R. Doc. 370.
[27] *Id.*
[28] R. Doc. 372.
[29] R. Doc. 420.
[30] *Id.* at 8–10.

On January 9, 2019, Team filed the instant motion for summary judgment on the issue of its liability on the breach of contract claim.[31] Waypoint opposes the motion.[32]

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[33] "An issue is material if its resolution could affect the outcome of the action."[34] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[35] All reasonable inferences are drawn in favor of the nonmoving party.[36] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[37]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[38] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the

---

[31] R. Doc. 446.

[32] R. Doc. 455.

[33] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[34] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

[35] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

[36] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[37] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

[38] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[39]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[40]

## LAW AND ANALYSIS

I. **Because Team did not bring a claim for breach of an implied warranty in its Complaint, the Court denies Team's motion for summary judgment on the basis that Waypoint breach an implied warranty.**

Team argues the Prime Contract carries with it an implied warranty that "the plans and specifications prepared by the owner's design professionals are accurate and sufficient."[41] On this basis, it argues "Waypoint breached the Contract when it provided Team with construction plans that contained design errors and omissions committed by Waypoint's designers."[42]

In its Complaint, Team does not bring a cause of action based on Waypoint's alleged breach of an implied warranty.[43] The only cause of action for breach of contract is

---

[39] *Celotex*, 477 U.S. at 322–24.

[40] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322–24, and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

[41] R. Doc. 446-1 at 5.

[42] *Id.* at 8.

[43] R. Doc. 1 at 5, ¶¶ 28–32.

a claim that Waypoint withheld a "portion of the Contract Sum past the date of substantial completion" and that it failed to compensate Team for "labor, overhead and supervision" costs.[44]

Under Rule 56(a) of the Federal Rules of Civil Procedure, a party moving for summary judgment must "identify[] each claim or defense—or the part of each claim or defense—on which summary judgment is sought."[45] Team has not identified a claim asserted in its Complaint for Waypoint's breach of an implied warranty by providing Team with defective designs. The Court will not permit Team to expand the pleadings on the eve of trail to assert a new cause of action. As a result, the Court denies Team's motion for summary judgment in its favor that Waypoint breached an implied warranty.[46]

## II.   The Prime Contract's requirement that releases be "reasonably acceptable" to Waypoint is enforceable.

The Prime Contract provides:

[§ 5.2].3 as a prerequisite to final payment, the Contractor shall submit (i) a release in form reasonably acceptable to the Owner of liens and claims executed by the Contractor and by each of its subcontractors on behalf of which payment is requested and (ii) a Contractor's Environmental Certification in the form attached hereto as Exhibit F.[47]

In Team's reply memorandum and supplemental memorandum in support of the instant motion, Team argues that Waypoint's obligation to pay Team is suspensively conditioned on Waypoint's accepting a release submitted by Team, and thus the final

---

[44] *Id.* at ¶¶ 29, 30.

[45] FED. R. CIV. P. 56(a).

[46] Waypoint argues, based on *Harris Builders, L.L.C. v. URS Corp.*, 861 F. Supp. 2d 746 (E.D. La. 2012) (Barbier, J.), that the Louisiana contractor indemnity statute, LA. REV. STAT. § 9:2771, creates only an affirmative defense, not an affirmative cause of action. The Court need not reach this argument in this case because Team did not bring a cause of action under the statute.

[47] R. Doc. 446-2 at 6.

payment clause is null and unenforceable because the fulfilment of the condition is subject solely to Waypoint's "whim." [48] Team cites no cases in support of this argument.

"A conditional obligation is one dependent on an uncertain event. If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive."[49] "[C]ontractual provisions are construed as *not* to be suspensive conditions whenever possible."[50] Under article 1770 of the Civil Code, "[a] suspensive condition that depends solely on the whim of the obligor makes the obligation null."[51] In *Sam's Style Shop v. Cosmos Broad. Corp.*, a contract between a television station and an advertiser provided that "commercial material provided by AGENCY is subject to STATION approval and STATION may exercise a continuing right to reject such material, including a right to reject for unsatisfactory technical quality."[52] The Fifth Circuit, interpreting Louisiana law, found this provision made the station's acceptance of commercial material an obligation suspensively conditional on the station's approval, but did not find the condition was based solely on the whim of the agency.[53] The Court explained its reasoning as follows:

> [The condition] impliedly imposes on the station the duty of making a good-faith judgment, based on industry custom or some other reasonable basis, whether a given program or commercial is acceptable. . . . But the clause does not give station management an absolute and arbitrary right to reject a commercial after it has agreed to accept such advertisements.[54]

---

[48] R. Doc. 464 at 9–10, R. Doc. 477 at 11–13. This argument contradicts Team's argument that it complied with the final payment terms in the Prime Contract. Team appears to bring this argument in the alternative.
[49] LA. CIV. CODE art. 1767.
[50] *S. States Masonry, Inc. v. J.A. Jones Const. Co.*, 507 So. 2d 198, 201 (La. 1987) (emphasis in original) (citations omitted).
[51] LA. CIV. CODE art. 1770.
[52] 694 F.2d 998, 1000 n.4 (5th Cir. 1982) (ellipsis in original).
[53] *Id.* at 1002.
[54] *Id.* (citing *Steppach v. S.E. Worms & Co.*, 7 Teiss. 214, 214 (La. Ct. App. 1910); S. LITVINOFF, LOUISIANA CIVIL LAW TREATISE vol. 6, § 258 (1969)).

In this case, to the extent the Prime Contract suspensively conditions Waypoint's obligation to pay Team on Waypoint's finding acceptable a release submitted by Team,[55] the suspensive condition is valid and not subject solely to Waypoint's whim. The Prime Contract's requirement that the release be "reasonably acceptable" imposes on Waypoint the duty of making a good-faith judgment on a reasonable basis whether the release is acceptable. The term does not give Waypoint an absolute and arbitrary right to reject a release. As a result, the Court denies Team's motion for summary judgment on the basis that the final payment clause requiring a "reasonably acceptable" lien release is null and unenforceable.[56]

## III.   Genuine issues of material fact preclude summary judgment on whether Waypoint's final payment to Team was timely.

Team argues its submission of three lien waivers to Waypoint on July 27, 2016[57] satisfied the Prime Contract's requirement that it submit "a release in form reasonably acceptable to the Owner of liens and claims executed by the Contractor and by each of its subcontractors."[58] Because Waypoint paid Team on July 10, 2017,[59] almost one year after Team submitted the first three lien waivers, Team argues Waypoint's refusal to pay was unreasonable, in breach of provisions of the Prime Contract.[60] Waypoint argues the lien waivers of July 27, 2016 were not sufficient because they did not accurately represent

---

[55] *Cf. S. States Masonry*, 507 So. 2d at 203 (finding no suspensive condition when contract "merely dictated" when construction contractor's payment was to occur).

[56] The Court notes that, even if it were to find the term a suspensive condition dependent on Waypoint's whim and null under article 1770, the parties have performed their obligations under the contract, and the performance negates the nullity. *See Gibbs Const. Co. v. Thomas*, 500 So. 2d 764, 769 (La. 1987) ("[E]ven were we to find this condition constituted a potestative condition which normally would render the contract null, where there has been even a partial performance of the contract, that performance negates the nullity."). A potestative condition was the term used in former Code articles for suspensive conditions dependent on an obligor's whim. LA. CIV. CODE arts. 2024 (1870), *amended and recodified at* LA. CIV. CODE art. 1770 (1984); *see also* LA. CIV. CODE art. 1770 revision cmt. (e) ("This Article eliminates the expression 'potestative condition.'").

[57] R. Docs. 446-6, 455-3.

[58] R. Doc. 446-2 at 6–7 (emphasis added).

[59] R. Doc. 466-8 at 1, ¶ 3; R. Doc. 469 at 1, ¶ 3.

[60] R. Doc. 446-1 at 8–9.

Team's outstanding obligations to the subcontractors.[61] Waypoint argues that the lien waiver Team submitted on June 28, 2017 was the first acceptable lien waiver, and that its payment on July 10, 2017, twelve days later, was timely.[62]

The Court finds that whether the lien waivers were reasonably acceptable is an issue of fact for the jury. In *Corbello v. Iowa Prod.*, a lessee signed a contract requiring that, upon termination of a lease, it "*reasonably* restore the premises as nearly as possible to their present condition."[63] Plaintiff-landowners argued "the parties must either agree upon what is 'reasonable' or have a jury decide for them" and that, because the parties could not agree on a reasonable cost of restoration, "the question of the amount of damages necessary to reasonably restore the property was a factual issue decided by the jury."[64] The Louisiana Supreme Court upheld the trial court's submission of the issue of reasonableness to the jury.[65] Similarly, in this case, the issue of whether the lien waivers were "reasonably acceptable" creates an issue of fact for the jury.

Whether the July 27, 2016 lien waivers were accurate also is a question of fact material to the issue of breach of contract and the reasonableness of the waivers. In the list of undisputed facts attached to the instant motion, Team states it is uncontested that it "sent to Waypoint a document executed by Brent Fortner on June 27, 2017" and

---

[61] R. Doc. 455 at 12–13.

[62] *Id*. at 13–14.

[63] 2002-0826 (La. 2/25/03), 850 So. 2d 686, 694, *as clarified on reh'g* (June 20, 2003) (emphasis added), *superseded by statute on other grounds as stated in State v. Louisiana Land & Expl. Co.*, 2012-0884 (La. 1/30/13), 110 So. 3d 1038, 1049.

[64] *Id.*

[65] *Id.* at 695; *see also Temple v. Lindsay*, 161 So. 8, 12 (La. 1935) (finding, when contract required that drilling continue "'with due and reasonable diligence,' the question whether the work was done within a reasonable time or whether the contract was prosecuted with reasonable diligence is not one of law, but of fact necessarily, depending upon conditions and circumstances."); *accord Ergon-W. Virginia, Inc. v. Dynegy Mktg. & Trade*, 706 F.3d 419, 425 (5th Cir. 2013) (finding, under Texas law, that "[t]he word 'reasonable' is not ambiguous[, and w]hen it modifies other terms in a contract," it creates a "question of fact that must be answered by looking to the circumstances of the case.") (citation omitted).

attaches the final lien waiver.[66] Team does not represent that whether the lien waivers were accurate is an uncontested fact. Team also does not attach evidentiary support or cite evidence in the record from which the Court could conclude the lien waivers of July 27, 2016 satisfied the Prime Contract. In Waypoint's opposition to the instant motion, Waypoint states it is a contested issue of fact whether the lists of outstanding sums due to subcontractors attached to the lien waivers of July 27, 2016 were accurate and complete.[67] In support, Waypoint attaches the affidavit of Christopher Robertson, Jr., Waypoint's Chief Financial Officer, dated January 23, 2017.[68] Robertson attests that the first three lien waivers did not "release all claims by Team and its subcontractors."[69] As a result, Team has failed to show there are no genuine disputes of material fact on this issue.

## IV. Genuine issues of material fact preclude summary judgment on the issue of how the parties' conduct affected their obligations under the Prime Contract.

In its supplemental memorandum in support of the instant motion, Team argues that Waypoint "tossed aside from the outset" the payment procedures required by the Prime Contract.[70] Team attaches Waypoint's agreement with Laski, in which Waypoint and Laski agreed that Laski, as project manager for the Project, would "develop and implement procedures for the review and processing of applications by Contractors for progress and final payments."[71] Team argues that Waypoint's delegation of unfettered authority to Laski was incompatible with the Prime Contract and that Waypoint's actions effectively invalidated the Prime Contract's payment terms.

---

[66] R. Doc. 446-8 at 1, ¶ 2.
[67] R. Doc. 469 at 2–3, ¶¶ 1–3.
[68] R. Doc. 455-6.
[69] *Id.* at 4, ¶ 11.
[70] R. Doc. 7–8.
[71] R. Doc. 477-1 at 5, § 2.3.12.

"Under Louisiana law, contracts, even written contracts, may be modified by subsequent oral agreement or by the practice of the parties."[72] "[E]ven when the contract is assumed to contemplate a different course of action, the jurisprudence . . . has held the parties bound by the action taken and consented to in the performance of their contractual obligations."[73] "Testimonial or other evidence . . . may be admitted . . . to prove that [a] written act was modified by a subsequent and valid oral agreement."[74]

In this case, Team has not listed any undisputed facts or provided any factual evidence on which it bases its argument that Waypoint's conduct modified the contract or that the parties modified the contract by subsequent oral agreement. Team has failed to meet its burden of showing there are no material facts in dispute.  As a result, the Court also denies Team's motion for summary judgment on this basis.

<u>**CONCLUSION**</u>

For the foregoing reasons, **IT IS ORDERED** that the motion for summary judgment filed by Plaintiff Team Contractors, L.L.C. be and hereby is **DENIED**.[75]

**IT IS FURTHER ORDERED THAT** Plaintiff Team Contractors, L.L.C.'s request for oral argument on its motion for summary judgment be and hereby is **DENIED**.[76]

**New Orleans, Louisiana, this 20th day of March, 2019.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[72] *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 975 (5th Cir. 1991) (citing *Jenkins Const. Corp. v. Dep't of Transp. & Dev.*, 492 So. 2d 89, 90 (La. Ct. App.), *writ denied*, 496 So. 2d 1042 (La. 1986); *Nelson v. Appalachian Ins. Co.,* 399 So.2d 711, 712 (La.Ct.App. 1st Cir. 1981)).
[73] *Davis v. Laster*, 138 So. 2d 558, 564 (La. 1962) (citations omitted).
[74] LA. CIV. CODE art. 1848.
[75] R. Doc. 446.
[76] R. Doc. 447.