UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| TEAM CONTRACTORS, LLC, | CIVIL ACTION |
| Plaintiff | |
| VERSUS | NO. 16-1131 |
| WAYPOINT NOLA, LLC, ET AL., | SECTION: "E"(2) |
| Defendants | |

## ORDER AND REASONS

Before the Court is a motion for judgment as a matter of law or alternatively for a new trial, filed by Defendant Waypoint NOLA, L.L.C. ("Waypoint") under Rule 50(b) of the Federal Rules of Civil Procedure.[1] Plaintiff Team Contractors, LLC ("Team") opposes.[2] For the following reasons, the motion is **DENIED**.

## BACKGROUND

This dispute arises from contracts made in connection with the construction and renovation of Waypoint's property at 1250 Poydras St. in New Orleans ("the Project"). On September 19, 2014, Waypoint entered a contract with Development Construction Management LLC, represented by Steve Laski ("Laski"), under which Laski agreed to provide project management services for the Project.[3] On September 24, 2014, Team and Waypoint entered into a construction contract ("the Prime Contract"), under which Team became the general contractor for the Project.[4] Waypoint also entered into a contract with HC Architecture, Inc. ("HCA"), under which HCA agreed to serve as the project's

---

[1] R. Doc. 601.
[2] R. Doc. 604.
[3] R. Doc. 477-1.
[4] Trial Ex. 88.

1

architect.[5] HCA, in turn, subcontracted the mechanical, electrical, and plumbing design work to KLG, L.L.C. ("KLG").[6]

On April 13, 2016, Waypoint executed Change Order No. 9.[7] Team submitted three lien waivers to Waypoint on July 27, 2016.[8] Each lien waiver is labeled "Final Waiver of Liens" and includes an attachment listing outstanding sums owed to subcontractors.[9] The attachment to each of the three lien waivers lists different amounts owed to various subcontractors. Waypoint did not pay Team after receiving these first three lien waivers. On June 28, 2017, Team submitted a fourth lien waiver, which also was labeled "Final Waiver of Liens" and includes an attachment with a different list of outstanding sums owed to subcontractors.[10] On July 10, 2017, Waypoint paid Team the final payment amount of $1,023,514.09.[11]

On July 22, 2016, Team drafted Change Order No. 10, incorporating Change Order Requests 33, 56, 58, 59, and 64–69.[12]

On February 5, 2016, Team filed a complaint against HCA, KLG, and Waypoint.[13] Team alleged there were errors in the plans and specifications provided by Waypoint for the mechanical, electrical, and plumbing systems relating to the construction project, which were prepared by KLG.[14] Team also alleged Waypoint directed it to modify the MEP systems, but did not compensate Team for the additional costs Team incurred as a result

---

[5] Trial Ex. 87.
[6] R. Doc. 157-18. Defendant KLG informed the Court in its answer that it is now known as Salas O'Brien South, L.L.C. R. Doc. 34. The parties continued to refer to it as KLG. The Court will continue to do so in this order.
[7] Trial Ex. 325.
[8] Trial Ex. 320.
[9] Each lien waiver consists of two pages: the waiver signed by Team and an "Exhibit A" listing sums owed to subcontractors. Trial Ex. 320.
[10] Trial Ex. 320 at 7–8.
[11] R. Doc. 548 at 11, ¶ 7(5) (uncontested material facts in pretrial order).
[12] Trial Ex. 113.
[13] R. Doc. 1.
[14] *Id.* at 3, ¶ 16.

of the modifications.[15] Plaintiff Team brought a breach of contract claim against Waypoint, alleging Waypoint's failure to compensate Team breached the construction contract.[16] Team also brought negligence claims against Waypoint, HCA, and KLG.[17]

This Court conducted the first jury trial in this matter from February 26, 2018 to March 9, 2018. Three claims were tried: Team's breach of contract claim against Waypoint and Team's negligence claims against HCA and KLG.[18] Team did not pursue a negligence claim against Waypoint at trial.[19] The jury awarded Team $565,979.99 in damages.[20] On the negligence claims against HCA and KLG, the jury found HCA and KLG's conduct violated their professional duties of care and caused damage to Team.[21] The jury also found Waypoint had not breached the contract.[22] However, the jury assigned Waypoint and its agent responsibility for damages.[23] When assigning "percentages of responsibility for the damages" awarded, the jury assigned 30% to HCA, 60% to KLG, 5% to Waypoint, and 5% to Waypoint's project manager Steve Laski, who was not a party to the suit.[24]

On March 19, 2018, the Court entered judgment on the verdict against Defendants HCA and KLG for $509,381.99, representing 90% of the total damages the jury awarded.[25] The Court entered judgment in favor of Defendant Waypoint on the breach of contract claim.[26] On April 2, 2018, Team filed a motion to amend, arguing the jury's

---

[15] *Id.* at 4–5.
[16] *Id.* at 5.
[17] *Id.* at 5–7.
[18] R. Doc. 364.
[19] *Id.*
[20] *Id.* at 3, ¶ 8.
[21] *Id.* at 1, ¶ 1–4.
[22] *Id.* at 2, ¶ 6.
[23] *Id.* at 4, ¶ 9.
[24] *Id.*
[25] R. Doc. 370.
[26] *Id.*

3

finding that Waypoint did not breach its contract with Team was irreconcilably inconsistent with its assigning Waypoint and its agent responsibility for damages.[27]

On September 6, 2018, the Court granted Team's motion.[28] The Court found the jury verdict irreconcilably inconsistent, vacated the judgment in favor of Waypoint on Team's breach of contract claim, and ordered a new trial on the claim.[29]

The Court conducted the second jury trial in this matter from April 15, 2019 to April 17, 2019.[30] The trial was limited to Team's breach of contract claim against Waypoint.[31] Specifically, the Court limited the trial to (1) Team's breach of contract claim against Waypoint for Change Order Requests 33, 56, 58, 59, and 65, which were the unpaid change order requests finalized in Change Order No. 10 unrelated to design defects, and (2) Team's breach of contract claim for contractual interest based on Waypoint's failure to pay Change Order No. 9 until July 10, 2017.[32] On the final day of trial, Waypoint moved for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure.[33] The Court denied Waypoint's motion.[34]

Team sought the following unpaid amounts under Change Order No. 10:[35]

- Change Order Request 33 (Proposed Change Order 75)    $4,812.58
- Change Order Request 56 (Proposed Change Order 108)   $8,697.59
- Change Order Request 58 (Proposed Change Order 110)   $10,098.02
- Change Order Request 59 (Proposed Change Order 111)   $13,000.00
- Change Order Request 65 (Proposed Change Order 117)   $28,217.30

These amounts total $64,825.49.

---

[27] R. Doc. 372.
[28] R. Doc. 420.
[29] *Id.* at 8–10.
[30] R. Docs. 550, 554, 555.
[31] R. Doc. 519.
[32] *Id.* at 7–8.
[33] R. Doc. 555.
[34] *Id.*
[35] R. Doc. 548 at 8; Trial Ex. 113.

4

The jury found Team established by a preponderance of the evidence that Waypoint breached the contract by not paying Team for the amounts in Change Order Requests 33, 56, 58, 59, and 65, and awarded damages in the following amounts:[36]

- Change Order Request 33 (Proposed Change Order 75)    $4,812.58
- Change Order Request 56 (Proposed Change Order 108)   $6,000.00
- Change Order Request 58 (Proposed Change Order 110)   $10,098.02
- Change Order Request 59 (Proposed Change Order 111)   $13,000.00
- Change Order Request 65 (Proposed Change Order 117)   $25,835.83

These amounts total $59,746.43. The jury also found that Team established by a preponderance of the evidence that "Waypoint breached the contract by unreasonably deciding not to pay Team for Change Order No. 9, plus retainage," at two times: "within thirty days of Waypoint's signing Change Order No. 9" and "after Team's submission on July 27, 2016."[37]

On May 22, 2019, the Court entered an Order and Reasons finding Team was entitled to contractual interest and attorneys' fees.[38] The Court found contractual interest began to accrue on May 13, 2016, which was thirty days after Waypoint signed Change Order No. 9 on April 13, 2016.[39] The Court entered judgment for Team and against Waypoint in the amount of $113,766.36, representing the total of the contractual interest due on Change Order No. 9, the amounts awarded by the jury under Change Order No. 10, and contractual interest due on Change Order No. 10.[40]

On June 19, 2019, Waypoint filed the instant motion for judgment as a matter of law and alternatively for a new trial.[41] Team opposes.[42] Waypoint has filed a reply.[43]

---

[36] R. Doc. 559 at 1–5.
[37] *Id.* at 6, ¶¶ 11, 12.
[38] R. Doc. 589.
[39] *Id.* at 8.
[40] R. Doc. 590. The Court also awarded Team post-judgment interest and attorneys' fees. *Id.*
[41] R. Doc. 601.
[42] R. Doc. 604.
[43] R. Doc. 614.

# RULE 50(b) STANDARD

Rule 50(b) of the Federal Rules of Civil Procedure provides:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
> (1) allow judgment on the verdict, if the jury returned a verdict;
> (2) order a new trial; or
> (3) direct the entry of judgment as a matter of law.[44]

"A party is entitled to judgment as a matter of law 'only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position.'"[45] The Court does not "weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury. Judgment as a matter of law is appropriate if there is no legally sufficient evidentiary basis for a claim under the controlling law."[46]

# LAW AND ANALYSIS

## I. Contractual Interest Claim

The final payment term in the Prime Contract required Team to submit "a release in a form reasonably acceptable to the Owner of liens and claims executed by the Contractor and by each of its subcontractors on behalf of which payment is requested."[47] In the instant Rule 50(b) motion, Waypoint argues Team is not entitled to payment of interest because Team did not show at trial that Waypoint acted unreasonably in not

---

[44] FED. R. CIV. P. 50(b).
[45] *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 455 (5th Cir. 2001) (citation omitted).
[46] *Id.* (citation and internal ellipsis omitted).
[47] Trial Ex. 88 at 6, § 5.2.1.3.

6

paying Team.[48] Waypoint asserts it acted reasonably because Team did not submit lien waivers executed by each of its subcontractors on behalf of which it requested payment. Waypoint argues that, as a result, no reasonable juror could have found Team proved Waypoint acted unreasonably.

At trial, counsel for Team elicited testimony that the final payment terms of the Prime Contract were modified. On cross-examination, Waypoint's project manager Steve Laski admitted Waypoint did not follow the Prime Contract's requirement that the architect approve all pay applications because "[i]t's not required by the lender," and "[y]ou end up following what the lender requires."[49] Christopher Robertson, Waypoint's principal, admitted that he did not know whether the parties "submitted any of the pay applications to the architect for approval," or whether Waypoint followed the Prime Contract's provisions regarding final payment.[50] Robertson also testified as follows with respect to subcontractor lien waivers:

> Q. During this project, you required as owner, as the lender required, it was a lender requirement, that Team and its subcontractors execute interim lien waivers, correct?
> A. Yes, sir.
> Q. And at no time did Team or any of its subcontractors ever refuse to submit the lien waivers, the interim lien waivers?
> A. No, sir.
> Q. And, in fact, you were supplying the form or the language that needed to be in those lien waivers, correct?
> A. Yes, sir.
> Q. So it was Waypoint's responsibility to tell Team: This is what we need. Supply it to us?
> A. Yes, sir.
> Q. And, in fact, before you made the final pay application, you had to have lien waivers in place to get that money from the bank?
> A. Yes, sir.
> Q. And you got that money from the bank, correct, that final draw request?

---
[48] R. Doc. 601-1 at 5–10.
[49] R. Doc. 610 at 82:4, 11–12.
[50] R. Doc. 609 at 112:10–16.

> A. Yes, sir.
> Q. All right. So when you submitted that final draw request to the bank, you had all of the lien waivers you needed in place?
> A. No, sir.
> Q. But they [the bank] still paid you [Waypoint]?
> A. Yes, sir.[51]

Based on this testimony, counsel for Team argued the jury should decide "which provisions of these contracts were followed by the parties as written and which were modified by performance or otherwise."[52]

The Court gave the jury the following instruction with respect to oral modification of contracts:

> 31. A written construction contract may be modified by oral agreement and/or by the conduct of the parties. Modification of a written agreement may be presumed by silence, inaction, or implication. If a written contract is modified by an oral agreement between the parties, that oral agreement becomes the law between the parties. Whether one or more oral agreements modified a written contract is a question for the jury.
>
> A party attempting to prove a written contract was modified by oral agreement must prove the facts giving rise to the modification by a preponderance of the evidence.[53]

The Court finds that, in light of Robertson's testimony at trial, a reasonable jury could have found the parties orally modified the Prime Contract payment provision regarding final payment terms either (1) to require Team to provide subcontractor lien waivers only when requested by Waypoint or (2) not to require subcontractor lien waivers at all. A reasonable jury also could have found that, even if Team did not submit all of the subcontractor lien waivers, the lien waivers it did submit were in a form "reasonably acceptable to the Owner," as required by the Prime Contract. Waypoint has not

---
[51] *Id.* at 57:18–58:18.
[52] *Id.* at 128:25–129:2.
[53] R. Doc. 556 at 13, ¶¶ 31, 32.

established that no reasonable juror could find Waypoint acted unreasonably in not paying Team. As a result, Waypoint is not entitled to judgment as a matter of law on Team's claim for contractual interest.

## II. Change Order Damages

In its Rule 50(a) motion at trial, Waypoint argued it was entitled to judgment as a matter of law on Team's breach of contract claim with respect to the Change Order Requests finalized in Change Order No. 10 because Team did not introduce evidence that Waypoint *caused* Team's damages.[54] Counsel for Waypoint argued:

> [T]here is not one document that shows that Team did the work caused by Waypoint. That there is an important distinction in the contract that just because Team did the work doesn't mean they need to get paid from the owner. There can be multiple other reasons. We've heard testimony now that all of those other reasons are because of either Team itself or Team's subcontractors.[55]

The Court denied Waypoint's motion at trial, finding that a reasonable jury would have a legally sufficient evidentiary basis to find for Team on this issue.[56]

Interrogatories 1, 3, 5, 7, and 9 of the jury verdict form asked the jury whether Team had established by a preponderance of the evidence that Waypoint breached the contract by not paying Team for each line item in Change Order No. 10.[57] The jury answered "yes" to each interrogatory. The Court gave the jury the following instruction with respect to damages:

> 19. If Team has established by a preponderance of the evidence that Waypoint breached a contract provision, you must then decide whether that breach caused any of the damages that Team is attempting to recover.

---

[54] R. Doc. 610 at 138:21–139:2.
[55] *Id.*
[56] *Id.* at 140.
[57] R. Doc. 560.

9

> 20. If you find that Waypoint's breach of a contract provision caused damage to Team, you must determine the damages to which Team is entitled under the contract.[58]

The jury was instructed that, to find a breach of contract, it had to find that the breach caused Team's damages. The jury's finding that Waypoint breached the contract necessarily included a finding that the breach caused Team's damages.

In the instant Rule 50(b) motion, Waypoint argues Team did not "sufficiently prove with certainty its damages for those change orders."[59] A motion under Rule 50(b) is "technically only a renewal" of the Rule 50(a) motion at trial.[60] The Fifth Circuit "prohibit[s] parties from using a Rule 50(b) motion to 'assert a ground that was not included in the original motion.'"[61] Waypoint did not base its Rule 50(a) motion at trial on Team's failure to introduce evidence to support the quantum of damages. Rather, it argued Team did not introduce sufficient evidence to support a jury finding that Waypoint caused the damage suffered by Team. Waypoint cannot raise the issue of whether Team presented sufficient documentary evidence to support the quantum of damages by a Rule 50(b) motion.

Even if the Court considered Waypoint's argument that Team did not introduce sufficient evidence of damages, the Court would find a reasonable jury could have found in favor of Team. Waypoint admits Team introduced documentary evidence and testimony regarding the amount of damages.[62] However, Waypoint asserts Team failed to introduce "cancelled checks, invoices, correspondence, wire transfers, credit card

---

[58] R. Doc. 556 at 14, ¶¶ 19, 20.
[59] R. Doc. 601-1 at 10–16.
[60] *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 172 (5th Cir. 1985).
[61] *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 290 (5th Cir. 2019) (quoting *id.*) (internal brackets omitted).
[62] R. Doc. 601-1 at 13–15.

statements, credit card bills, or any other tangible and documentary evidence to support" the costs in Change Order No. 10.[63]

At trial, Team presented extensive testimony about the monetary amounts in Change Order No. 10 and how they were calculated.[64] Team also introduced Change Order No. 10[65] and cost breakdowns for various line items.[66] The Court finds there was sufficient evidence at trial for a reasonable jury to find Team proved its damages to a reasonable certainty.

### III. New Trial

Waypoint alternatively requests a new trial, arguing the jury verdict is against the clear weight of the evidence and would result in a miscarriage of justice.[67] Under Rule 59 of the Federal Rules of Civil Procedure, the Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."[68] "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course."[69] In determining whether a jury verdict is against the great weight of the evidence "the district court weighs all the evidence, but need not view it in the light most favorable to the nonmoving party. While the court is to respect the jury's collective wisdom and must not simply substitute its opinion for the jury's."[70] The Court finds the verdict of the jury was supported by the evidence and does

---

[63] *Id.* at 15.
[64] *See, e.g.*, R. Doc. 608 at 179–95 (testimony of Brent Fortner).
[65] Trial Ex. 113.
[66] Trial Ex. 507.
[67] R. Doc. 601-1 at 16–17.
[68] FED. R. CIV. P. 59(a)(1).
[69] *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (citations omitted).
[70] *Id.*

not result in a miscarriage of justice. As a result, the Court denies Waypoint's motion for a new trial.

## **CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that motion for judgment as a matter of law or alternatively for a new trial, filed by Defendant Waypoint NOLA, L.L.C. under Rule 50(b) of the Federal Rules of Civil Procedure, be and hereby is **DENIED**.[71]

**New Orleans, Louisiana, this 2nd day of August, 2019.**

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**

---

[71] R. Doc. 601.